IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARRYL L. HOUSTON,
    Petitioner,

vs.                                           Case No.: 3:07cv23/RV/EMT

WALTER A. McNEIL,[1]
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 6). Respondent filed an answer and relevant portions of the state court record (Docs. 13, 14). Petitioner filed a reply (Doc. 19).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of the submissions of the parties and the state court record, it is the opinion of the undersigned that Petitioner has failed to establish a colorable claim for relief; therefore, an evidentiary hearing is not required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed by the parties and established by the state court record (Doc. 14, Exhibits). Petitioner was charged, by a second amended information, with the following crimes: (1) grand theft auto, (2) fleeing or attempting to elude a law enforcement officer in an agency vehicle with sirens and lights activated at high speed,

---

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

(3) aggravated assault on a law enforcement officer, (4) criminal mischief, (5) criminal mischief, (6) driving while license revoked, (7) resisting an officer with violence, (8) reckless driving, and (9) aggravated battery upon a law enforcement officer (Doc. 14, Ex. A at 6–8).  The conduct underlying the grand theft auto charge was Petitioner's use of a truck on November 28, 2002, without the owner's permission (*id*. at 6).  The conduct underlying the remaining charges was a police chase on November 29, 2002, during which Petitioner forced an officer's cruiser off the road and into oncoming traffic, Petitioner hit two vehicles in a parking lot with the truck he was driving, Petitioner touched an officer with the truck, and Petitioner struggled with officers when they attempted to arrest him (*id*. at 6–8).  Following a jury trial in the Circuit Court for Escambia County, Florida, Petitioner was found guilty of trespass to a conveyance, fleeing or attempting to elude a law enforcement officer, aggravated assault on a law enforcement officer, driving while license revoked, resisting an officer without violence, reckless driving, and battery (*id.* at 47–49).  On September 24, 2003, Petitioner was sentenced as a habitual felony offender to concurrent terms of twenty (20) years of imprisonment, with credit for pre-sentence jail time of 300 days, on the counts of fleeing or attempting to elude a law enforcement officer and aggravated assault on a law enforcement officer, and he was sentenced to time served on the remaining counts (*id.* at 55–60).

  Petitioner appealed the judgment of conviction and sentence to the Florida First District Court of Appeal (First DCA) (Doc. 14, Exs. C, D, E).  On November 24, 2004, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing December 10, 2004 (Doc. 10, Ex. E).  Houston v. State, 888 So. 2d 23 (Fla. 1st DCA Nov. 24, 2004) (Table).  Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

  On or about September 26, 2005, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 14, Ex. B at 1–14).  He subsequently filed an amended motion (*id*. at 31–45).  The trial court denied the motion without an evidentiary hearing in a written opinion issued on February 24, 2006 (*id.* at 46–49).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on August 23, 2006, with the mandate issuing October 20, 2006 (Doc. 13 at 5).  Houston v. State, 939 So. 2d 98 (Fla. 1st DCA Aug. 23, 2006) (Table).

Petitioner filed the instant habeas action on January 9, 2007 (*see* Doc. 1 at 1).  Respondent concedes that the petition is timely (Doc. 13 at 6).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the

decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

A. Ground one: "The trial court abused its discretion in denying Petitioner's motion for continuance."

(Doc. 6 at 4). Petitioner asserts that he subpoenaed Felisha Perry to testify at his trial because Ms. Perry was the only passenger in the truck, and therefore, the only eyewitness besides himself who could testify to Petitioner's state of mind and intent during the police chase (*id*.). Petitioner states her testimony was crucial to rebut the State's circumstantial evidence of his intent presented through the testimony of law enforcement officers (*id*, supporting memorandum at 2). Petitioner states Ms. Perry appeared at the courthouse, but she left before she was called to testify (*id*.). Petitioner states the trial court allowed a brief recess for defense counsel to locate Ms. Perry, but counsel was unable to do so (*id*.). Petitioner asserts defense counsel moved for a continuance, but the trial court denied the motion (*id*.). Petitioner claims that the court's denial of a continuance denied his right to compel the attendance of witnesses (*id*.).

Respondent contends Petitioner failed to exhaust this claim in the state courts (Doc. 13 at 12–14). Respondent concedes that in Petitioner's brief on direct appeal of his conviction, he cited Washington v. Texas, 388 U.S. 14 (1967), a Supreme Court case which relied upon the Sixth Amendment as the source of a defendant's right to compel witnesses, in support of his claim that

the trial court's denial of defense counsel's motion for a continuance was an abuse of discretion and a violation of Petitioner's constitutional right to compel witnesses (*id*. at 13). However, Respondent contends that Petitioner failed to present the federal claim in a procedurally proper manner because Petitioner failed to preserve the federal claim for appellate review in accordance with state law by failing to present the federal issue to the trial court (*id*. at 13–14). Respondent argues that a key aspect of the State's answer brief on appeal was that the federal constitutional issue was never presented to the trial court and, therefore, not preserved for appellate review (*id*. at 13). The appellate court affirmed the conviction without written opinion, thereby providing this court with no guidance as to the basis for its decision.

Assuming arguendo that the federal claim was exhausted and is not procedurally barred, Petitioner is not entitled to habeas relief because he has failed to show that the trial court's denial of a continuance violated the Constitution.

The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense, including the right to present witnesses. *See* Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986); Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); Washington v. Texas, 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); Taylor v. Illinois, 484 U.S. 400, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988). Although all of these cases deal with the same general constitutional principle of a defendant's right to present witnesses, the circumstances of each case are distinguishable from the instant case and render their holdings inapplicable.

In Crane, the trial court determined that Defendant Crane's confession was voluntary, but Crane still wished to introduce evidence of the circumstances of the confession to "cas[t] doubt on its validity and its credibility." 476 U.S. at 685–86 (internal quotations omitted). The trial court denied Defendant Crane's request and prevented him from introducing any evidence about the duration of the interrogation or the individuals who were in attendance. *Id.* In reversing, the Supreme Court observed that the circumstances surrounding the making of a confession are often relevant not only to its voluntariness, but also to its credibility. *Id.* at 688. The Court held that the blanket exclusion of testimony about the circumstances of the confession deprived Crane of a fair trial. *Id.* at 690. In the instant case, Petitioner presented evidence of his version of the police chase

and the circumstances underlying his possession of the truck, as well as his intent and state of mind concerning both events, through his own testimony; therefore, the trial court's failure to grant a continuance did not amount to a blanket exclusion of all testimony regarding his version of the events.[3]

In Chambers, Gable McDonald gave a sworn confession that he was responsible for the murder that Defendant Chambers was charged with committing. 410 U.S. at 287. Mr. McDonald later repudiated the confession. *Id.* at 288. Defendant Chambers called McDonald as a witness but was kept from cross-examining him because Mississippi's "voucher" rule prevented a party from impeaching his own witness, unless the witness was adverse, and the trial court ruled that McDonald was not adverse. *Id.* at 291, 295–96. The trial court also prevented, on hearsay grounds, Chambers from calling several friends of McDonald who heard him confess. *Id.* at 298. The Supreme Court held that Chambers' due process rights were violated. *Id.* at 302. In the instant case, Petitioner was not prevented from cross-examining a witness, nor was he prevented from introducing any evidence on hearsay grounds; therefore, the trial court's denial of a continuance did not violate Chambers.

In Washington, the witness that Defendant Washington wished to call was prevented from testifying by state law because he had been convicted as a participant in the same crime. 388 U.S. at 16–17. The justification for a rule that prevented co-defendants from testifying at each other's trials was that "each would try to swear the other out of the charge." *Id.* at 21 (internal quotations omitted). In holding that the statute violated Washington's Sixth Amendment right to compulsory process, the Supreme Court did not hold that a defendant could never be prevented from calling any witness. *See id.* at 23. The state statute violated the Constitution because it was an "arbitrary rule[ ] that prevent[ed] [a] whole categor[y] of defense witnesses from testifying on the basis of a priori categor[y] that presume[d] them unworthy of belief." *Id.* at 22. In the instant case, Petitioner was not prevented from calling an entire category of possible witnesses; therefore, the trial court's denial of a continuance did not violate Washington.

---

[3]Petitioner did not allege, either in the state courts or this court, that he would not have testified if Ms. Perry had testified.

Case No. 3:07cv23/RV/EMT

In Taylor, the trial court excluded a defense witness as a sanction for the defense's failure to disclose the witness' identity during discovery. 484 U.S. at 401–02. The Supreme Court held that while the Sixth Amendment could be violated by precluding testimony of a defense witness as a sanction for a discovery violation, there was no absolute bar to preclusion. *Id.* at 409–10. The Court actually affirmed the trial court's decision to preclude the witness from testifying as a sanction. *Id.* at 416. Thus, Taylor demonstrates that the right of a defendant to present witnesses is not absolute.

In Callahan v. Campbell, the Eleventh Circuit evaluated the holdings of the aforementioned Supreme Court cases in relation to a claim that the state trial judge violated Defendant Callahan's Sixth Amendment right to compel the attendance of witnesses by denying his motion to recuse. 427 F.3d 897 (11th Cir. 2005). Prior to trial, the defense made a motion to recuse the trial judge, Judge Monk, on the ground that Judge Monk could "possibly" be called as a witness to the circumstances of Callahan's interrogation by law enforcement. 427 F.3d at 929. The trial court denied the motion to recuse. *Id.* At trial, Assistant District Attorney Hubbard, who interrogated Callahan, testified regarding the circumstances of the interrogation, as did Mr. Lybrand, an attorney who attempted to speak with Callahan during the interrogation, at the request of Callahan's father. *Id.* at 904–08, 930. In his federal habeas petition, Callahan argued that his rights under the Compulsory Process Clause of the Sixth Amendment were violated because he was prevented from calling Judge Monk as a witness. *Id.* at 929–30. Assuming that Callahan's motion to recuse was a sufficient attempt to employ compulsory process such that Judge Monk's denial of the motion to recuse was a denial of a request to call him as a witness, the Eleventh Circuit held that Callahan failed to show that the trial court's refusal to permit him to call Judge Monk as a witness violated Crane, Chambers, Taylor, or Washington, because there was no blanket exclusion of testimony about the interrogation since Assistant District Attorney Hubbard and Attorney Lybrand both testified about what they saw during the interrogation, Callahan was not prevented from cross-examining a witness or introducing hearsay evidence, and Callahan was not prevented from calling an entire category of possible witnesses, that is, judges. *Id.* at 929–31. Additionally, the court rejected the proposition that the Sixth Amendment provides a defendant the absolute right to call his preferred witness, for example, a witness that he deems most credible. *Id.* at 931.

Also relevant to this issue is the federal standard for analyzing due process challenges to a trial court's denial of a continuance.  "The decision of whether to grant a continuance is reserved to the sound discretion of the trial court."  Van Poyck v. Florida Dep't of Corrections, 290 F.3d 1318, 1326 (11th Cir. 2002); Alderman v. Zant, 22 F.3d 1541, 1558 (11th Cir. 1994) ("Trial courts are afforded broad discretion in determining whether a continuance should be granted."); Morris v. Slappy, 461 U.S. 1, 11, 103 S. Ct. 1610, 1616, 75 L. Ed. 2d 610 (1983); United States v. Bowe, 221 F.3d 1183, 1189 (11th Cir. 2000); Gorby v. State, 630 So. 2d 544, 546 (Fla. 1993).  Furthermore, "to establish that a denial of a continuance was reversible error, a defendant must show that the denial caused "'specific substantial prejudice.'"  Van Poyck, 290 F.3d at 1326 (quoting United States v. Verderame, 51 F.3d 249, 251 (11th Cir. 1995)); *see also* Fennie v. State, 648 So. 2d 95, 97–98 (Fla. 1994).  "There is no particular mechanistic device for determining whether the denial of a continuance results in a violation of due process."  Alderman v. Zant, at 1558 (citing Unger v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 849–50, 11 L. Ed. 2d 921 (1964)).  "The answer must be derived from the circumstances of the particular case, especially the reasons presented to the trial judge at the time the request is denied."  *Id.*

Finally, trial court error alone does not alone provide a basis for federal habeas relief.  The petitioner must establish that the error was not harmless, in other words, that the error "had [a] substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S. Ct. 1710, 1722; 123 L. Ed. 2d 353 (1993); Chapman  v. United States, 547 F.2d 1240, 1249–50 (11th Cir. 1977); United States v. Meneses-Davila, 580 F.2d 888, 890 (5th Cir. 1978).

In the instant case, Petitioner has failed to establish that the trial court's failure to grant a continuance and enforce his right to compel Ms. Perry's attendance at trial violated his rights under the Compulsory Process Clause or the Due Process Clause.  After the State presented its case, defense counsel advised the court that he intended to present testimony from three witnesses, in addition to Petitioner, the third witness being Felisha Perry (Doc. 14, Ex. A, Trial Transcript at 130–31).  The trial judge told the court security officer to bring Ms. Perry into the courtroom so she could be sworn, and the security officer responded that Ms. Perry had left the courthouse (*id*. at 131). The proceedings continued as follows:

      MR. WILLIAMS [defense counsel]: Judge, if she's—I don't mind doing the others and asking them to check again, but she was instructed—she was subpoenaed, she was instructed to be here at 1:30. If she's left, I will be asking the Court to contempt her.

      THE COURT:  All right.

      MR. WILLIAMS:  So I don't—

      THE COURT:  All right. Well, let's bring the—we'll see if she returns, though. Let's go ahead and bring the jury back in. You want Mr. Robinson at this time?

      MR. WILLIAMS: No, . . .
. . . .
      THE COURT:  Okay. Who do you want next as a witness?

      MR. WILLIAMS:  My next witness will be Deputy Tolbert.

(Trial Transcript at 131–32).

      After Deputy Tolbert testified, the trial judge asked defense counsel if he wanted to check for Ms. Perry's presence (Trial Transcript at 137). The following occurred:

      MR. WILLIAMS:  Yes, Judge. For the record, I'm calling Felisha Perry.

      THE COURT:  All right.

      MR. WILLIAMS:  Now, I did send somebody down to the snack bar to check for us there.

      THE COURT:  Why don't you step out and see, if you want, to see if she's returned.

      MR. WILLIAMS:  Judge, I've been advised that Ms. Perry was here and has now left. I'll need to do a motion where she's concerned. Actually, Judge can we approach the bench? I need to do a couple of other motions.

      THE COURT:  All right.

      (At the bench:

MR. WILLIAMS: . . . I'm going to have to move to continue this matter so that I can track her down. I mean, she was served. She apparently received service. I can confirm that with my process server.

I know that I spoke with her. She was told originally to be here at 10:00. I spoke to her yesterday, and after going over how many witnesses were anticipated, I told her to be here at 1:30. Apparently, she was here at 1:30. It is now less than 2:30. It's 1:56. She hasn't even waited an hour. Court security tells me that Lieutenant Chavers told them that she left as in left the building. So I'll move for a continuance.

I'm also going to move for the Court to issue a warrant for her arrest for failure to appear, and then once we get her in, we can deal with her.

MR. SIMON [the prosecutor]: You got a phone number?

MR. WILLIAMS: Yeah, I do.

MR. SIMON: Let's just try calling her at first. This happened the other day and I got the lady on the phone and told her to be here and she came back.

MR. WILLIAMS: All right. I'll try calling her.

MR. SIMON: If not, I'd say I don't want to continue it. I suggest you send—

THE COURT: I'll give you a short recess to try, five minutes to try to reach her by telephone or see if you can locate her here in the building. Then we'll come back in five minutes. Okay.

MR. WILLIAMS: Thank you.

(Trial Transcript at 137–38).

After the recess, the court security officer informed the court and counsel that Ms. Perry was not present (*id.* at 139). The security officer asked defense counsel how Ms. Perry was traveling to and from the courthouse, and defense counsel responded that she had some form of available transportation because he was able to speak with her at her home in the amount of time between her leaving the courthouse and the recess (*id.*). Counsel also suggested that Ms. Perry may have been ill because her voice was "rough" when he spoke to her "this afternoon," whereas she did not sound ill when he spoke with her "last night" (*id.* at 139). The trial judge granted a 15-minute recess and

stated, "If she's not here by then, that's your problem" (*id*.). Fifteen minutes later, defense counsel reported that he contacted Ms. Perry's house and was told Ms. Perry had left, but she had not appeared at the courthouse (*id*.). Counsel then stated, "I'll go ahead, if you want to call the jury in, I'll call her name and check, get on the record she's not here, and then I'll call my client to the stand." Defense counsel then put on the record the fact that Ms. Perry was served with a trial subpoena and instructed to be at the courthouse at 1:30 (*id*. at 140). Defense counsel then called Petitioner to the stand (*id*.).

      The circumstances surrounding defense counsel's request for a continuance do not show that defense counsel specifically requested a continuance of trial until enforcement proceedings to compel Ms. Perry's appearance could be conducted. Although the record conclusively establishes that defense counsel moved for a continuance to enable him to "track [Ms. Perry] down," and counsel moved for issuance of a warrant for her failure to appear, when the prosecutor responded to the motions suggesting that defense counsel attempt to telephone Ms. Perry prior to seeking issuance of a warrant, defense counsel agreed, thereby indicating a withdrawal of his request for a warrant. Additionally, although the trial court's subsequent comment, "I'll wait another 15 minutes. If she's not here by then, that's your problem" was a denial of any additional time to locate Ms. Perry, after the recess, defense counsel did not renew his request for a warrant or otherwise object to proceeding without Ms. Perry; rather, defense counsel stated, "I'll go ahead, if you want to call the jury in, I'll call her name and check, get on the record she's not here, and then I'll call my client to the stand" (Trial Transcript at 139–40). After Petitioner testified and before the defense rested its case, defense counsel again asked court security to call for Ms. Perry, and when she did not appear, defense counsel did not request a continuance or the initiation of proceedings to compel her appearance; instead, he proceeded with his case (*id*. at 161). After the defense rested and the State indicated no rebuttal, defense counsel renewed his previous motion for judgment of acquittal, and stated, "In addition, I don't know if the Court wants me to do it separately, but I'm going to ask the Court to issue a show cause" (*id*. at 163). The trial judge responded that he would address the matter after trial, and defense counsel agreed (*id*.).

      The circumstances fail to show that the trial court's proceeding with trial in the absence of Ms. Perry violated Petitioner's right to compel witnesses in his defense. At no time during the

discussions between counsel and the trial judge did defense counsel clearly indicate his objection to proceeding in the absence of Ms. Perry, nor did he indicate that Ms. Perry was a material witness or that she would have given testimony favorable to the defense. In the absence of a clear indication by defense counsel that a continuance was necessary to the defense, the undersigned cannot conclude that Petitioner has demonstrated constitutional error with regard to the trial court's denial of a continuance.

Additionally, even if the trial court's failure to continue the trial was constitutional error, Petitioner has failed to show that the error was not harmless. Although Petitioner speculates as to what Ms. Perry would have said if she had testified at trial,[4] he has failed to proffer any actual evidence of the substance of Ms. Perry's proposed testimony, for example a deposition transcript, affidavit of Ms. Perry, or similar evidence. This court will not "'blindly accept speculative and inconcrete claims . . . .'" Raulerson v. Wainwright, 753 F.2d 869, 876 (11th Cir. 1985) (quoting Baldwin v. Blackburn, 653 F.2d 942, 947 (5th Cir. 1981)). The burden of proof is on the petitioner in a habeas corpus proceeding. Jones v. Estelle, 632 F.2d 490, 492 (5th Cir. 1980).[5] In the absence of sufficient evidence showing that Ms. Perry would have provided material, favorable testimony, Petitioner has failed to show that the trial court's failure to grant a continuance to compel Ms.

---

[4]Petitioner asserted in his Rule 3.850 motion that Ms. Perry would have testified that he did not steal the truck; the owner of the truck had permitted Petitioner to drive the truck on several occasions; the owner of the truck did not report the truck as stolen; a number of times during the police chase, the police officers attempted to stop the truck by swerving into the truck and forcing it off the roadway; and Petitioner did not intend to assault anyone involved (*see* Doc. 14, Ex. B at 33–37).

[5]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

Case No. 3:07cv23/RV/EMT

Perry's attendance had a substantial and injurious effect or influence on the jury's verdict.[6] Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

> B.    Ground two: "The denial of Petitioner's motion for post-conviction relief is not fairly supported by the record."

(Doc. 6 at 4).  Petitioner states he filed a Rule 3.850 motion raising five grounds for relief (*id*.).  The trial court summarily denied the motion, and the First DCA affirmed the decision (*id*.).  Petitioner claims that the state court decisions deprived him of his constitutional rights because the state court's "factual determination" was not fairly supported by the record, as required by Rule 3.850(d) (*id*., supporting memorandum at 2).  Petitioner further argues in his reply brief that the trial court's denial of his Rule 3.850 motion was based upon an unreasonable determination of the facts under § 2254(d)(2) because the trial court decision failed to conclusively show that he was not entitled to relief, as required by Rule 3.850(d) (Doc. 19 at 2).  Petitioner states that Rule 3.850(d) and due process principles required the trial court to grant relief, schedule an evidentiary hearing, or issue an order specifically delineating the facts and law that conclusively demonstrated he was not entitled to relief and attach portions of the record (*id*.).  Petitioner states that the record of the Rule 3.850 proceedings clearly shows that the trial court failed to comply with this procedure and arrived at an unreasonable decision which was not supported by the facts or the state court record (*id*.).

Also in his reply brief, Petitioner argues that the record does not support the state court's "factual determination" that his Sixth and Fourteenth Amendment rights were not violated by trial counsel's deficient performance (*id*. at 3).  Petitioner states that he exhausted his claim of ineffective

---

[6]The court notes that in defense counsel's opening statement at trial, he stated what he anticipated Ms. Perry would say if she testified:

> What I anticipate she's going to say is that there were numerous instances where the police officers attempted to try to force Mr. Houston to stop, swerved into him, things of that nature.  She'll also be able to explain the situation with the vehicle, and demonstrate to you that it was not stolen.
>
> We'll also be able to demonstrate how the incident during the course of the police chase occurred where the police actually forced Mr. Houston into that parking lot in an attempt to try to make him stop.

(Doc. 14, Ex. A, Trial Transcript at 31).  However, the generality of counsel's description of Ms. Perry's anticipated testimony is insufficient to show that the absence of her testimony had a substantial and injurious effect on the verdict. Moreover, the facts that Petitioner alleges Ms. Perry would have provided in her trial testimony were presented to the jury through Petitioner's testimony.

Case No. 3:07cv23/RV/EMT

assistance by explicitly asserting the substance of his federal constitutional violation in the state court, and he refers the court to Exhibit B of his Appendix (Doc. 19, Appendix to Petitioner's Response). Exhibit B is a photocopy of pages 4 through 7 of Petitioner's Rule 3.850 motion, which set forth Petitioner's second ground for relief, specifically, a claim of ineffective assistance of counsel based upon counsel's failure to secure the presence of Felisha Perry at trial (*id*., Ex. B).

To the extent Petitioner claims that the state post-conviction proceedings violated state procedural rules, specifically, Rule 3.850(d), Petitioner is not entitled to federal habeas relief because federal relief is available to correct only constitutional injury.  28 U.S.C. § 2254(a); Wainwright v. Goode, 464 U.S. 78, 104 S. Ct. 378, 78 L. Ed. 2d 187 (1983); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 2976, 73 L. Ed. 2d 1361 (1981); Sims v. Singletary, 155 F.3d 1297, 1312 (11th Cir. 1998). Errors of state law which do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief.

Additionally, to the extent Petitioner claims that the Rule 3.850 proceedings violated his due process rights, his claim is without merit. The Supreme Court has indicated that the Constitution does not require that states provide post-conviction review or any other collateral proceedings beyond direct appeal. *See* Murray v. Giarratano, 492 U.S. 1, 10, 109 S. Ct. 2765, 2770, 106 L. Ed. 2d 1 (1989); Pennsylvania v. Finley, 481 U.S. 551, 557, 107 S. Ct. 1990, 1994, 95 L. Ed. 2d 539 (1987); United States v. MacCollom, 426 U.S. 317, 322, 96 S. Ct. 2086, 2090, 48 L. Ed. 2d 666 (1976). Correspondingly, virtually every circuit court, including the Eleventh Circuit, has ruled that errors in the process or substance of state court collateral proceedings are not cognizable on federal habeas review. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *See* Quince v. Crosby, 360 F.3d 1260, 1261–62 (11th Cir. 2004) (an alleged defect in a collateral proceeding does not state a basis for habeas relief; rather, habeas relief is available to address only defects in a criminal defendant's conviction and sentence) (citing Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding that federal habeas petitioner's claim that his due process rights were violated when the state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief")); Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999);

Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Montgomery v. Meloy, 90 F.3d 1200, 1206 (7th Cir. 1996); Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990); Bryant v. Maryland, 848 F.2d 492, 492 (4th Cir. 1988); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986); *but see* Dickerson v. Walsh, 750 F.2d 150, 153 (1st Cir. 1984) (noting position of other circuits on the question and concluding that federal habeas was proper avenue for attacking state post-conviction proceedings, but ultimately finding that the petitioner failed to properly exhaust his state remedies).  Thus, because Petitioner's claim does not represent a constitutional challenge to his confinement, it does not constitute grounds for habeas relief.

However, in light of Petitioner's pro se status, the undersigned liberally construes Petitioner's reply brief as challenging the state court decision denying his ineffective assistance of counsel claim based upon counsel's failure to secure the presence of Felisha Perry at trial.

    1.  Clearly Established Supreme Court Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88.  It is the petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable and that he suffered prejudice as a result thereof.  *Id.* at 687.  If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

> In determining whether counsel's performance was reasonable, the Court instructed:
>
> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  *Cf.* Engle v. Isaac, 456 U.S. 107, 133–134, 102 S. Ct. 1558, 1574-1575, 71 L. Ed. 2d 783 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's

> conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See* Michel v. Louisiana, *supra*, 350 U.S. at 101, 76 S. Ct. at 164.

Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland, the Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Strickland, 466 U.S. at 693. However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption

of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698, 104 S. Ct. at 2070; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2. Federal Review of State Court Decision

Petitioner raised this ineffective assistance claim as his second ground for relief in his Rule 3.850 motion (*see* Doc. 14, Ex. B at 34–37). Petitioner asserted that Ms. Perry would have testified as follows: Petitioner did not steal the truck; the owner of the truck had permitted Petitioner to drive the truck on several occasions; the owner of the truck did not report the truck as stolen; a number of times during the police chase, the police officers attempted to stop the truck by swerving into the truck and forcing it off the roadway; Petitioner did not intend to assault anyone involved; and Petitioner was "roughed up" by officers once the truck stopped (*id*. at 35).

In the written opinion denying Petitioner's claim, the post-conviction court found as fact that defense counsel called Felisha Perry as a witness, and although she was present earlier that day, she subsequently left after the trial began and could not be found (*id*. at 47). The state court's written opinion identified the Strickland standard as applicable to claims of ineffective assistance of counsel (*id.*). Based upon its application of Strickland to its factual findings, the state court concluded that the actions of defense counsel did not rise to the level of ineffective assistance of counsel (*id*.).

Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

Petitioner has not proffered any evidence to rebut the state court's factual findings, and a review of the state court record confirms that they are correct. The portions of the trial transcript described *supra* demonstrate that defense counsel called Felisha Perry as a witness, she was at the courthouse on the day of trial but left after the trial began, and she could not be located when defense counsel called her as a witness. Furthermore, even if counsel performed deficiently by failing to take further steps to secure Ms. Perry's attendance at trial, Petitioner has failed to show a reasonable probability that the result of trial would have been different if counsel had not erred. The only way that Petitioner could succeed on this claim is if this court were to speculate that Ms.

Perry would have testified under oath at trial in the manner that Petitioner suggests. However, as previously noted, there is insufficient factual support in the record or otherwise to support Petitioner's assertions as to the content of Ms. Perry's trial testimony. Absent evidence in the record, this court cannot consider Petitioner's speculative assertions on a critical issue, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. Furthermore, the facts that Petitioner alleges Ms. Perry would have provided in her trial testimony were presented to the jury through Petitioner's testimony. Therefore, Petitioner has failed to meet his burden of establishing a reasonable probability that he would have been acquitted of the charges if counsel had secured Ms. Perry's attendance at trial. Accordingly, the state court decision denying Petitioner's claim was not an unreasonable application of <u>Strickland</u>.

Based upon the foregoing, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter A. McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 6) be **DENIED**.

At Pensacola, Florida, this 7th day of May 2008.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**